## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| WINGS OVER ENGLEWOOD LLC, and TINA WILLIAMS, | ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HARTFORD UNDERWRITERS INSURANCE COMPANY ("Hartford"), by and through its attorneys, Michael J. Duffy and Michael J. O'Malley, of Wilson Elser Moskowitz Edelman & Dicker LLP, for its Complaint for Declaratory Judgment against WINGS OVER ENGLEWOOD LLC ("Wings LLC"), and TINA WILLIAMS ("Williams"), states as follows:

## STATEMENT OF THE CASE

1.      This action seeks a declaration, pursuant to 28 U.S.C. §2201, that Hartford owes no insurance coverage obligations to Wings LLC for the claims raised in the four-count, putative class action lawsuit filed by Williams styled: *Tina Williams, individually, and on behalf of all others similarly situated, v. Wings Over Englewood, LLC, et al*, Case No.: 2022-CH-00326, filed in the Circuit Court of Cook County, Chancery Division (the "Underlying Action"). A copy of the First Amended Class Action Complaint filed in the Underlying Action is attached hereto as "**Exhibit A**."

## PARTIES

2. Hartford is an insurance company formed under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

3. Wings LLC is an Illinois Limited Liability Company with its principal place of business located within the geographic boundaries of this District. The members of Wings LLC are citizens of Illinois.

4. Williams is a citizen of Illinois who resides within the geographic boundaries of this District. As the plaintiff in the Underlying Action Williams is named as an interested party Defendant to be bound by the judgment of this Court.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, Hartford is a citizen of Connecticut, and Wings LLC and Williams are citizens of Illinois.

6. Wings LLC has sought coverage under the Policy for the claims against it in the Underlying Action.

7. Hartford denies coverage under the Policy with regard to the Underlying Action.

8. An actual justiciable controversy exists between Hartford, and the Defendants herein as to the availability of insurance coverage to Wings LLC under the Policy for the claims in the Underlying Action.

9. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief that may be necessary.

281710309v.1

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Wings LLC conducts business within the geographical boundaries of this District, Williams resides in this District, this coverage dispute arises from events that occurred within the geographical boundaries of this District, and this coverage dispute arises in part due to the Underlying Action which is pending within the geographical boundaries of this District.

## FACTS

### A.     THE UNDERLYING ACTION

11.     On January 18, 2022, Williams commenced the Underlying Action alleging violations of the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA").

12.     On April 26, 2022, Williams filed a First Amended Class Action Complaint in the Underlying Action.

13.     The Underlying Action alleges that while employed by Wings LLC and as a condition of their employment, Williams and the putative class members allegedly were required to use a biometric time clock each time they started and finished work (including breaks) in lieu of using a time card.

14.     The Underlying Action alleges Wings LLC violated BIPA each time they collected, disclosed, or otherwise disseminated Williams' and the putative class member's biometric identifiers without first obtaining their informed written consent.

### B.     THE POLICY

15.     Hartford issued a Business Owner's policy bearing policy number 83 SBA AM3H3D to Wings LLC with effective dates of August 1, 2021 to August 1, 2022 ("Policy") that contains the following pertinent coverages: Business Liability Coverage, Employment Practices

Liability Coverage ("EPL Coverage"), and Umbrella Liability Coverage. A true and accurate copy of the Policy is attached as "**Exhibit B**."

16. Subject to all of its terms, the Business Liability Coverage in the Policy states:

    **A. COVERAGES**

        **1. Business Liability Coverage (Bodily Injury, Property Damage, Personal And Advertising Injury) Insuring Agreement**

            **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

                  \* \* \*

            **b.** This insurance applies:

               **(1)** To "bodily injury" and "property damage" only if:

               **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

               **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

               **(c)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **C.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or

4

resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

\*      \*      \*

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **C.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*See* Ex. B.

17.     Subject to all of its terms, the Business Liability Coverage in the Policy also contains the following exclusions, conditions, and definitions:

**B.     EXCLUSIONS**

**1.     Applicable To Business Liability Coverage**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

**(1)** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to

5

281710309v.1

"bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

**(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

\*   \*   \*

**p.**   **Personal And Advertising Injury**

"Personal and advertising injury":

\*   \*   \*

**(2)** Arising out of oral, written, electronic, or any other manner of publication of material whose first publication took place before the beginning of the policy period;

\*   \*   \*

**(11)** Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

\*   \*   \*

**(15)** Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of

6

any access to or disclosure of any person's or organization's confidential or personal information;

\*     \*     \*

**q.**     **Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

**(1)**     Damages because of "bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)**     Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if such damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraphs **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

\*     \*     \*

**r.**     **Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**(1)**     A person arising out of any:

**(a)**     Refusal to employ that person;

7

     **(b)**     Termination of that person's employment; or

     **(c)**     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, malicious prosecution or false arrest directed at that person;

\*     \*     \*

**t.**     **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(1)**     The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)**     The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    **(3)**     The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

    **(4)**     Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*     \*     \*

8

### F.    LIABILITY AND MEDICAL EXPENSES DEFINITIONS

**5.**    "Bodily injury" means physical:

    **a.**    Injury;

    **b.**    Sickness; or

    **c.**    Disease sustained by a person and, if arising out of the above, mental anguish or death at any time.

*     *     *

**16.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*     *     *

**17**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral, written, electronic, or any other manner of publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral, written, electronic, or any other manner of publication of material that violates a person's right of privacy;

    **f.**    Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"; or

9

**g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".

\*       \*       \*

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

As used in this definition, "electronic data" is not tangible property.

*See* Ex. B.

18. The Policy also includes EPL Coverage, which provides in part:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE**

**(CLAIMS MADE)**

**NOTICE: COVERAGE PROVIDED BY THIS COVERAGE PART IS CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO US IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE DEDUCTIBLE. PAYMENTS OF CLAIM EXPENSES ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMITS OF LIABILITY. PLEASE READ THE COVERAGE PART CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. UPON TERMINATION OF THIS COVERAGE PART, EXTENDED REPORTING PERIOD COVERAGE IS AVAILABLE.**

\*       \*       \*

10

**SECTION I • INSURING AGREEMENT**

**Employment Practices Liability**

We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the **"**Insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".

\*　　　\*　　　\*

**F.** "Damages" means the amounts, other than "claim expenses," that the "insureds" are legally liable to pay solely as a result of a "claim" covered by this Coverage Part, including settlement amounts, pre- and post-judgment interest, costs awarded pursuant to judgments, or the multiple portion of any multiplied damage award.

The following are not considered "damages" and are not covered by this Policy:

**a.** taxes, fines or penalties imposed by law;

**b.** non-monetary relief;

*See* Ex. B.

**K.** "Employment practices claim" means any:

**1.** written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

**2.** civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

**3.** formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document; by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor."

11

"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.

"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.

However**, "**employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

L.     "Employment practices wrongful act" means:

1.     wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

2.     sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;

3.     employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

4.     "Retaliation";

5.     breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

6.     violation of the Family and Medical Leave Act.

"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:

**a.** employment-related wrongful infliction of mental anguish or emotional distress;

**b.** failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

**c.** negligent retention, supervision, hiring or training;

**d.** employment-related invasion of privacy, defamation, or misrepresentation; or

**e.** an "employee data privacy wrongful act".

\* \* \*

**RETROACTIVE DATE ENDORSEMENT –**

**EMPLOYMENT PRACTICES LIABILITY**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE**

**I.** **SECTION I - INSURING AGREEMENT** of this Coverage Part is amended to include the following:

This Coverage Part applies only to "claims" for "wrongful acts" that occurred on or after the "retroactive date" set forth in the Declarations and before the end of the "policy period", regardless of whether such "claim" is made during the "policy period" or the Extended Reporting Period, if applicable.

**II.** The following definition is added to **SECTION II - DEFINITIONS** of this Coverage Part:

"Retroactive date" means the date specified in the Declarations [August 1, 2021]. If no date is specified, the "retroactive date" will be the same as the Effective Date of this Coverage Part.

All other terms and conditions of this Coverage Part remain unchanged.

*See* Ex. B.

19. Subject to all of its terms, the Policy also provides certain Umbrella Liability Coverage, which contains the following terms, exclusions, and conditions:

## UMBRELLA LIABILITY SUPPLEMENTAL POLICY

*          *          *

**A.     COVERAGES**

**1.     Umbrella Liability Insurance**

**Insuring Agreement**

**a.**     We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in Section **D. LIMITS OF INSURANCE**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section **B. INVESTIGATION, DEFENSE, SETTLEMENT**.

**b.**     This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

**(1)**     The "bodily injury" or "property damage" occurs during the "policy period", or the "personal and advertising injury" is caused by an offense committed during the "policy period"; and

**(2)**     Prior to the "policy period", no "insured" listed under Paragraph **1.** of Section **C. WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "insured" or authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be

14

deemed to have been known prior to the "policy period".

c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph **1.** of Section **C. WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for "damages" because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2. Exclusions**

This Supplemental Policy does not apply to:

\*  \*  \*

**d. Personal And Advertising Injury**

"Personal and advertising injury".

**(1)** EXCEPTION

This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this Supplemental Policy apply to any claim or "suit" to which "underlying insurance" does not apply. This EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule Of Underlying Insurance.

When this EXCEPTION applies, the insurance provided under this Supplemental Policy for "personal and advertising injury" will follow the

15

same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

This EXCEPTION does not apply to:**(b)** **Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

\*       \*       \*

**s.**     **Employment Practices Liability**

Any injury or damage to:

**(1)**     A person arising out of any:

**(a)**     Refusal to employ that person;

**(b)**     Termination of that person's employment; or

**(c)**     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, malicious prosecution or false arrest directed at that person; or

16

**(2)** The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(1)(a)**, **(1)(b)** or **(1)(c)** above is directed.

**(3)** This exclusion applies:

**(a)** Whether the injury-causing event described in Paragraphs **(1)(a)**, **(1)(b)** or **(1)(c)** above occurs before employment, during employment or after employment of that person;

**(b)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(c)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

\*       \*       \*

**w.** **Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

**(1)** Damages because of "bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if such damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

17

However, unless Paragraph (1) above applies, this exclusion does not apply to "damages" because of "bodily injury".

\*       \*       \*

**y.**     **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**     The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)**     The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)**     The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)**     Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*       \*       \*

## UMBRELLA LIABILITY SUPPLEMENTAL POLICY

Except as otherwise stated in this endorsement, the terms and conditions of the Supplemental Policy apply.

**D.**     Definition **4**. "damages" of Section **F.**, **DEFINITIONS** is deleted and replaced by the following:

"Damages" means a monetary award, monetary settlement or monetary judgment.

**a.**     The following are not considered "damages" and are not covered by this Supplemental Policy:

**c.**     Fines, penalties, sanctions or taxes;

18

        **d.**      Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"' or

        **e.**      Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of this Supplemental Policy.

*    *    *

*See* Ex. B.

**COUNT I**

**No Employment Practices Liability Coverage**

20. Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if set forth herein.

21. Subject to all of its terms, the Policy provides certain EPL Coverage for "loss" resulting from an "employment practices claim" for an "employment practices wrongful act" by the "insureds" as those terms are defined in the Policy.

22. The Underlying Action does not allege an "employment practices wrongful act" as the term is defined in the Policy.

23. As such, no EPL Coverage exists with regard to the claims made in the Underlying Action.

24. Accordingly, Hartford has no duty to defend or indemnify Wings LLC for the claims in the Underlying Action under the EPL Coverage.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

281710309v.1

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings

LLC for the claims against it in the Underlying Action under the EPL Coverage;

and

B.      For all such just and equitable relief, including costs of this Lawsuit.

## COUNT II
### No Coverage For Conduct Prior to EPL Retroactive Date

25.      Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above

as if fully set forth herein.

26.      The EPL Coverage is subject to, among other things, a Retroactive Date provision

that states coverage does not exist for claims stemming from wrongful acts that occurred before

August 1, 2021.

27.      The Underlying Action stems from conduct occurring as early as July 2017.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court

enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings

LLC for the claims against it in the Underlying Action under the EPL Coverage;

and

B.      For all such just and equitable relief, including costs of this Lawsuit.

## COUNT III
### No "Bodily Injury" or "Property Damage" Caused By an "Occurrence"
### (Business Liability Coverage & Umbrella Liability Coverage)

28.      Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above

as if fully set forth herein.

281710309v.1

29.     Subject to all of the Policy's terms, the Business Liability and Umbrella Liability Coverage's Insuring Agreements provide coverage for claims for damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policy.

30.     The claims in the Underlying Action do not concern claims for damages because of "bodily injury" or "property damage" caused by an "occurrence."

31.     Accordingly, Hartford does not owe any defense or indemnity obligations to Wings LLC under the "bodily injury" or "property damage" coverage parts of the Business Liability or Umbrella Liability Coverages in the Policy for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

## COUNT IV
## No Coverage For Expected Or Intended Injury—Exclusion B.1.(a)(1) and (2)

32.     Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if fully set forth herein.

33.     The Business Liability Coverage, at Exclusion B.1. (a)(1) and (2), precludes coverage for "bodily injury", "property damage" or "personal and advertising injury" expected or intended from the standpoint of the insured.

34.     To the extent "bodily injury" "property damage" or "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, this Exclusion precludes coverage.

281710309v.1

35.     Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the Business Liability Coverage for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

**COUNT V**
**No Coverage For Personal And Advertising Injury—Exclusion B.1.(p)(11)**
**Statutory Right of Privacy**

36.     Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if fully set forth herein.

37.     The Business Liability Coverage, at Exclusion B.1 (p) (11), precludes coverage for any "personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

38.     All of the damages sought in the Underlying Action arise out of Wings LLC's access to or disclosure of Williams' and class member's confidential, personal, and nonpublic biometric information protected by BIPA.

39.     To the extent "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, this Exclusion precludes coverage.

40.     Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the Business Liability Coverage for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

281710309v.1

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings

LLC for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**COUNT VI**
**No Coverage For Employment-Related Practices**

41.      Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above

as if fully set forth herein.

42.      The Business Liability Coverage, at Exclusion R(c), and the Umbrella Liability

Policy at Exclusion 2.s. (c)., preclude coverage for any "bodily injury" or "personal and advertising

injury" to a person arising out of employment-related practices, policies, or omissions.

43.      To the extent "bodily injury" or "personal and advertising injury" is alleged in the

Underlying Action, which Hartford denies, said injury or damage arises from employment-related

practices, policies, or omissions, and are therefore, precluded from coverage.

44.      Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the

Business Liability Coverage or Umbrella Liability Coverages for the claims in the Underlying

Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court

enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings

LLC for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**COUNT VII**
**No Coverage For Access To or Disclosure of Confidential Information**

45.      Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above

as if fully set forth herein

23

281710309v.1

46. The Business Liability Coverage at Exclusion B.1.(p)(15), and the Umbrella Liability Coverage at Exclusion 2(b), preclude coverage for "bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information, health information or any other type of nonpublic information.

47. All of the damages sought in the Underlying Action arise out of Wings LLC's access to or disclosure of Williams' and class member's confidential, personal, and nonpublic biometric information.

48. To the extent "bodily injury," "property damage," or "personal and advertising injury" is even alleged in the Underlying Action, which Hartford denies, these Exclusions preclude coverage.

49. Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the Business Liability Coverage or Umbrella Liability Coverages for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A. A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B. For all such just and equitable relief, including costs of this Lawsuit.

### COUNT VIII
### No Coverage For Access To or Disclosure of Confidential Information Or Personal Information And Data-Related Liability

50. Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if fully set forth herein

51. The Business Liability Coverage at Exclusion B.1.(q) and the Umbrella Liability Coverage at Exclusion 2.w., preclude coverage for "bodily injury" or "property damage" arising

24

out of any access or disclosure of any person's or organization's confidential or personal information, health information or any other type of nonpublic information.

52.     All of the damages sought in the Underlying Action arise out of Wings LLC's access to or disclosure of Williams' and class member's confidential, personal, and nonpublic biometric information.

53.     To the extent "bodily injury," or "property damage," is even alleged in the Underlying Action, which Hartford denies, these Exclusions preclude coverage.

54.     Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the Business Liability or Umbrella Liability Coverages for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

## COUNT IX
### No Coverage For Recording And Distribution Of Material Or Information In Violation Of Law

55.     Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if fully set forth herein.

56.     The Business Liability Coverage at Exclusion B.1.(t)(4), and the Umbrella Liability Coverage at Exclusion 2.y., preclude coverage for "bodily injury", "property damage" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny federal, state, or local statute, ordinance, or regulation . . . that addresses, prohibits or limits the . . . dissemination, disposal, collecting, recording, sending, transmitting, communication or distribution of material or information."

281710309v.1

57.     All of the damages sought in the Underlying Action arise out of Wings LLC's access to or disclosure of Williams' and class member's confidential, personal, and nonpublic biometric information in violation of BIPA.

58.     To the extent "bodily injury", "property damage" or "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, each of these Exclusions preclude coverage.

59.     Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the Business Liability or Umbrella Liability Coverages for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

### COUNT X
### No Coverage For Personal And Advertising Injury—Umbrella Liability Exclusion 2.d.

60.     Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if fully set forth herein

61.     The Umbrella Liability Coverage, at Exclusion 2.d., precludes coverage for any "personal and advertising injury" arising out of any claim to which "underlying insurance" does not apply.

62.     Since the Business Liability Coverage does not apply to "personal and advertising injury" alleged in the Underlying Action, this Exclusion precludes coverage under the Umbrella Liability Coverage.

63.     Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the Umbrella Liability Coverage for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**COUNT XI**
**No Coverage For "Damages"—Definition F(a) & F(b).**
**(Business Liability & EPL Coverage)**

64.     Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if fully set forth herein.

65.     The Business Owner's Policy, at Definition F(a)., and the EPL Coverage, at Definition F(a), state that "damages" shall not include taxes, fines, or penalties imposed by law.

66.     Sums alleged in the Underlying Action fall within these provisions and coverage is precluded for said sums.

67.     The Business Owner's Policy, at Definition F(b), and the EPL Coverage, at Definition F(b), state that "damages" shall not include non-monetary relief.

68.     Relief sought in the Underlying Action falls within these provisions and coverage is precluded for said relief.

69.     Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the EPL Coverage for these claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

281710309v.1

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**COUNT XII**
**No Coverage For "Damages"—Definition f.4**
**(Umbrella Liability Coverage)**

70.      Hartford incorporates and restates the allegations of Paragraphs 1 through 19 above as if fully set forth herein.

71.      The Umbrella Liability Policy, at Section f.4, defines "damages" as a monetary award, monetary settlement, or monetary judgment, not including fines, penalties, sanctions, taxes, attorney's fees and costs associated with any non-monetary relief awarded against the insured, or any monetary award, monetary settlement, or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of the Umbrella Liability Policy.

72.      Sums alleged in the Underlying Action fall within this provision and coverage is precluded for said sums.

73.      Accordingly, Hartford has no duty to defend or indemnify Wings LLC under the Umbrella Liability Coverage for these claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify Wings LLC for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

281710309v.1

Respectfully Submitted,

By: _/s/ *Michael J. Duffy*_

    One of the Attorneys for Hartford Underwriters Insurance Company

Michael J. Duffy
Michael.Duffy@wilsonelser.com
Michael J. O'Malley
Michael.O'Malley@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street - Suite 3800
Chicago, Illinois 60603-5016
(312) 704-0550

281710309v.1

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: _____ /s/ *Michael J. Duffy* _____
             One of the Attorneys for Hartford Underwriters Insurance Company

281710309v.1